## THE PEOPLE v. WALTER DANN.

*Forcible resistance in protection of goods.*

1. An execution purchaser went with a pistol to take possession. The judgment debtor resisted him with a pistol and was thereupon prosecuted as for an assault with intent to murder. *Held*, that he was entitled to put in evidence the record of the proceedings in the case in which the execution issued, for the purpose of showing that the sale was illegal; and to show also that before the levy the property had been sold to a third person for whom respondent was taking care of it.

2. The owner of land may resist a trespasser upon it who seeks without right to remove therefrom chattels that have been sold to another for whom such land-owner is protecting them; and if, in so doing, he has a reasonable apprehension of danger from the intruder, resistance with a deadly weapon is justifiable.

Error to Ionia. (V. H. Smith, J.)  April 18.—April 23.

ASSAULT with intent to murder.  Conviction reversed.

*A. A. Ellis* for appellant.

Attorney General *Van Riper* for the People.

SHERWOOD, J.  The respondent was convicted in the Ionia circuit court of an assault with intent to murder one Riley Wilson, on the 19th of September, 1882, and sentenced to two years' imprisonment.  The defense made was justification in defense of his person and property.

The respondent owned forty acres of land in the township of Sebewa, in Ionia county, and Wilson was engaged in mercantile business in an adjoining township.  In 1879 respondent rented his farm to one Rogers and removed to Muskegon county, and there remained until July, 1882, when he returned to the vicinity of his farm.  While at Muskegon Wilson commenced a suit by attachment against defendant as a non-resident, and in August, 1882, the sheriff of Ionia county, under the proceedings taken in the attachment suit,

made a sale of Dann's interest in the wheat raised and stacked upon the farm that year, and Wilson became the purchaser on the sale, and left the same, as he claimed, in possession of Rogers, who was then occupying the farm as defendant's tenant.

The defendant claimed and proposed to show—*first*, that by reason of defective legal proceedings no title to the wheat passed to Wilson on the sale made by the sheriff; *second*, that on the 21st of August, 1882, Rogers released his interest in the premises under the lease to the defendant, and made surrender thereof to him; *third*, that prior to the sheriff's levy defendant had sold the wheat to Mrs. Layman; and at the time the attachment took place he was there upon the premises to look after the wheat and to place it in the granary in the barn for her. If either of these propositions was sustained, then Wilson had no interest or title to the wheat, and was himself a trespasser in entering upon the premises to take the same away.

The testimony shows that in the morning of the day the shooting occurred Wilson was informed that if he went to the farm for the wheat he would have no trouble if he took it under a writ of replevin; otherwise he would find difficulty, as Dann intended resisting his taking it. Wilson, however, went to the farm with the avowed purpose of getting the grain, and if necessary, by force. The record further shows that Wilson had been informed and understood that the defendant would be there that day to take charge of the wheat, and that he claimed to be entitled to control the same. And with this understanding Wilson seems to have gone to the farm prepared with a pistol to defend his action in taking the grain, and if necessary in doing so by using his weapon.

It appears the defendant had taken counsel of a lawyer as to his legal rights to the custody of the wheat, and was informed that he was entitled to it and that Wilson had no right to take it away.

For the purpose of showing Wilson had no right to the wheat, by showing the execution sale illegal, the defendant's

counsel offered in evidence the record of the proceedings in the case of *Riley N. Wilson v. Walter Dann* (it being the case in which the execution issued). This was objected to as immaterial, and the court sustained the objection. The defendant also offered to show that prior to the levy by the sheriff he had sold the wheat claimed under the levy, to Mrs. Layman, and that she was the owner thereof. This testimony was also ruled out by the court. All of this testimony was proper, and should have been received. No other claim was made by Wilson to the wheat, except what he derived through the levy and sale, and if he obtained none he was a trespasser.

Defendant was the owner and in possession of the farm, and Mrs. Layman of the wheat, and he acted for her in caring for it, and he had a right to defend this property against the encroachments by Wilson, and use so much force as was necessary for that purpose. It needs no citation of authorities to maintain this elementary principle of the law. A man is not obliged to abandon his farm, his home or his goods to a trespasser or intruder unless he voluntarily chooses so to do. On this record we must assume that the defendant could have made the proofs offered and rejected.

It further appears that, having this right to protect the property, the defendant, while in his efforts to assert and maintain it, was confronted by a concealed weapon used by Wilson against him, and in making his defense against this attack used his own pistol. This he had the right to do if he feared, and had good cause to fear, his life was in danger. In such cases courts cannot and will not undertake to pass upon the surroundings with very great nicety in determining just when, and at what particular stage of the affray, the defendant may be justified in using a deadly weapon in defending his person. Every case must be governed by its own particular circumstances, and they vary to such an extent, and depend so much upon appearances and incidents occurring at the moment of greatest danger, that he who encounters it must, to a very great extent, be left to determine for himself the means necessary to be used for his own

protection, and in reviewing the discretion used by him, no great amount of speculation and refinement as to probabilities can safely be indulged in by the court.

There are many nice questions concerning the extent of the right of self-defense, but they do not, we think, exist in this case. It is sufficient to say that the facts, as they appear upon the record, and as we think they were properly proposed to be proved, if believed by the jury, would have made the respondent's defense perfect; and it is difficult to see why Wilson should not be regarded as the aggressive party, and equally culpable, at least, with the respondent. He went to the farm to take the wheat by force; he went armed with a pistol, and evidently with an intent to use it, if necessary, to accomplish his object, and did use it for that purpose. In the case of *Pond v. People* 8 Mich. 177, this Court held: "If any forcible attempt is made, with a felonious intent against person or property, the person resisting is not obliged to retreat, but may pursue his adversary, if necessary, till he finds himself out of danger." A reasonable apprehension of such danger is all that is necessary in such case.

Upon the People's own showing in this case, had death resulted the defendant would have been guilty of no more than manslaughter, and under all the circumstances a new trial would be necessary.

The judgment of conviction must be reversed and the respondent discharged.

The other Justices concurred.